IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT LAMONT IRELAND             *
            Plaintiff,

            v.                    *        CIVIL ACTION NO. WDQ-10-1943

WARDEN PHILLIP MORGAN, et al.     *
            Defendants.

                                ***

**MEMORANDUM OPINION**

Pending is Defendants Phillip Morgan, Gary D. Maynard, Michael J. Stouffer, Jon Galley,

Asst. Comm. A.R.P. Process Headquarters Designee, A.R.P. Coordinator Headquarters Designee,

Sgt. Shimko, Sgt. Carter, Lt. Michael Malloy, Sgt. Harris, Ofc. Dorcon, Capt. Butter, Major Douglas

E. Cloman, James E. Tichnell, John A. Rowley, Bobby Shearin, Cynthia Holley and Scott S.

Oakley's Motion to Dismiss or for Summary Judgment.[1] The Plaintiff has not filed a response.[2] No

hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, the motion for

summary judgment will be granted.

**I.    Background**

From March 8, 2007 to January 12, 2009, while incarcerated at North Branch Correctional

Institution ("NBCI"), Ireland filed 29 administrative remedy processes ("ARPs"). ECF No. 27, Ex.

3. He withdrew five ARPs. *Id.*, Ex. 4. One ARP was dismissed at the institutional level because it

was written in the third person as though it was filed by another inmate. *Id.*, Ex. 5. Two ARPs were

---

[1] Lenora C. Adegbesan has not been served with the Complaint. For the reasons that follow, even ifshe had properly been served, Plaintiff's complaint against her would be subject to dismissal.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on May 6, 2011, the Plaintiff was notified that the Defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action. ECF No. 28. The Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the Court. *Id.* Plaintiff sought and was granted several extensions of time to file his response. ECF Nos. 30-43. To date, he has failed to do so.

in regard to a stopped up toilet; each was dismissed as moot at the institutional level and on appeal. *Id.*, Ex. 6. Another ARP concerning Plaintiff's opportunity to earn his GED was also dismissed as moot at the institutional level and on appeal. Eight ARPS were dismissed as meritless at the institutional level and on appeal. These ARPs concerned: requests for bottom bunk; mail delivery; bread distribution practices; denial of a meal; prison job pay; lock-down policy; meals received during lock down; and medical care. *Id.*, Ex. 7. One ARP, concerning medical care, was dismissed at the institutional level as repetitive. *Id.*, Ex. 8.

Six ARPs were immediately dismissed as untimely. *Id.*, Ex. 9. They concerned: complaints about poor medical care; denial of a mirror for shaving; receipt of only two bag lunches; out of cell activity; state issued clothing; and dangerousness of his top bunk bed. *Id.* Four more ARPs were found to be untimely on appeal. Five other appeals concerning medical care, bugs in the chow hall, NBCI operations, and a claim that the handler did not have dog under control were dismissed because the appeals were filed too late. *Id.*, Ex. 10.

One ARP concerning sick call was found to be meritorious in part on appeal, and the Warden was instructed to review his procedures and correct the error. *Id.*, Ex. 11 at 1. Ultimately, the Administrative Law Judge concluded plaintiff's grievance lacked merit and denied and dismissed it. *Id.* at 17-26.

The Plaintiff was transferred to Western Correctional Institution ("WCI") on January 12, 2009. He received orientation and initial classification on January 20, 2009 and was placed on administrative segregation while staff investigated whether the Plaintiff could be housed in general population, or was a member of a security threat group ("STG"). ECF No. 27, Ex. 12, 13. The Plaintiff was not identified as a member of a STG. He was removed from administrative segregation on February 6, 2009, and reassigned to general population on February 9, 2009. *Id.*, Ex. 12.

Ireland was reassigned to administrative segregation on March 19, 2009, pending an investigation into an altercation that occurred on the compound. ECF No. 27, Ex. 12, 14, 17. Additionally, on May 19, 2009, his case manager interviewed him regarding a letter he sent to DOC Headquarters concerning his security status and request to be transferred from WCI. *Id.*, Ex. 12. He was reminded that his security reclassification score did not warrant a decrease in security. He was advised that his history of assault and the fact that he was on administrative segregation pending investigation into an assault did not support a decrease in his security classification. Ireland was also advised that due to his maximum security status and documented enemies at NBCI, he would remain at WCI until it was determined he could safely be housed in a medium security institution. *Id.*, Ex. 12. Ireland was released from administrative segregation and returned to general population on August 7, 2009. *Id.*, Ex. 12, 14 & 18.

On May 12, 2010, Ireland had his annual review. He was advised that a lesser security status would not be recommended merely because he had not received an adjustment for some time, and he would need to do something positive to improve his security status. *Id.*, Ex. 12.

On July 12, 2010, the Plaintiff was placed on administrative segregation pending investigation into telephone misuse. *Id.* He was returned to general population on September 8, 2010. *Id.*, Ex. 20. On September 23, 2010, he was placed in the labor pool and on the school waiting list. *Id.*, Exs. 12 & 14.

From March 25, 2009 to October 22, 2010, while housed at WCI, Ireland filed 66 ARPs. *Id.*, Ex. 22. Twelve related to claims raised in the instant complaint. Ireland withdrew ARPs concerning lack of access to Division of Corrections directives in the library and denial of access to courts and legal references. *Id.* Ex. 22, 23. Ireland's ARP concerning denial of access to legal materials in the library was dismissed at the institutional level after investigation and a finding that he had been

afforded access to the legal materials on numerous occasions. *Id.*, Ex. 22. His appeal was denied. Other ARPs concerning denial of access to legal materials were dismissed as repetitive or without merit as there was no evidence to support the Plaintiff's claim. *Id.*, Ex. 22, 24, 25, 26.

Ireland's ARPs regarding case management actions (assignment and policies governing administrative segregation), decisions by the IGO, and the T-Netix phone system were all dismissed at the institutional level as outside the jurisdiction of the ARP process. His appeals of those decisions were denied. *Id.*, Ex. 28-31.

Ireland also filed an ARP regarding the WCI mail policy, which requires the confiscation of legal envelopes. The ARP was dismissed as moot as the institution had rescinded the policy. *Id.*, Ex. 22, 32.

Ireland's remaining ARPs concerned a multitude of issues including: need for a new identification card; missing a meal due to not having an ID card; medical issues; discrimination by the IGO coordinator at NBCI; the remedy process; confiscation of property; damage of property during transfer; denial of hygiene items; recreation yard needing a port-a-potty; diminution credits; shower conditions; access to medical records; medical care; unit management and housing complaints; bottom bunk issues; telephone issues; recreation issues; security status; lack of toilet paper; interruption of programs; bedding and clothing issues; inability to speak to the warden; a correctional officer who was intoxicated and threatened him; boots that had no traction on a greasy floor; injury during escort; mail he did not receive; and a correctional officer harassing him. *Id.* Ex. 22.

The Plaintiff raises a plethora of claims. He states that when he was transferred to WCI on January 12, 2009, he was placed on administrative segregation and held there for 40 days due to

4

suspected gang activity. He claims that Lt. Creek told the Plaintiff that the real basis for his placement on administrative segregation was due to his litigation history.

The Plaintiff also claims that since the ARP was changed in August of 2008 he has filed an "enormous amount of ARPs/grievances/appeals" which have all been dismissed.

He alleges that from September to November, 2009, the telephone system was changed so that prisoners could only add or remove phone numbers from their "list" every 90 days. He states his telephone calls with his attorney were recorded, a process that violated his right to access the courts as he was unable to call his attorney regarding his civil action, *Ireland v. Shearin*, pending before the Maryland Court of Appeals. He also claims that he missed unspecified filing deadlines because he was denied adequate access to a computer, typewriter, and legal reference materials.

Lastly, the Plaintiff claims that since January 12, 2009, he has suffered retaliation due to his litigation history and his assaultive history toward staff. He states that in retaliation, he has been denied the ability to progress through the system, lower security status, and access to rehabilitative programs. The Plaintiff states that his complaints regarding retaliation have not been properly investigated by any of the named Defendants. ECF Nos. 1 & 3.

## II.   Analysis

### A.   Standard of Review

Under Fed. R. Civ. P. 56(a):

A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Summary judgment is appropriate under Rule 56(a) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists if the non-moving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the non-moving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.  *Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla"of evidence in support

of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

B.     Housing

The Plaintiff alleges that his placement on administrative segregation upon his transfer to WCI was improper. He further alleges that his continued confinement at WCI and denial of access to programming violated his rights. ECF Nos. 1 & 3.

In the prison context, a liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U. S. 472, 484 (1995) (holding that disciplinary segregation does not implicate prisoner's liberty interest because the conditions were similar to administrative segregation). Ireland's liberty interests were not implicated in the decisions associated with his placement on administrative segregation at WCI, as it is not atypical for inmates to be placed on administrative segregation. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("administrative segregation is . . . well within the terms of confinement ordinarily contemplated by a prison sentence" and does not implicate prisoners' liberty interests);[3] *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) ("conditions of confinement in administrative segregation . . . do not implicate a liberty interest"). There is nothing in the record showing that the nature of Ireland's assignments to administrative segregation at WCI comprised the

---

[3] "Unrelated portions of the holding in *Hewitt v. Helms* have been superannuated by later case law. This portion of

atypical hardships contemplated in *Sandin* or *Beverati*. Therefore, they do not implicate a liberty interest.

Further, Plaintiff's transfer to WCI does not in and of itself implicate a liberty interest; he is not entitled to notice and an opportunity to be heard prior to his transfer because as a prisoner he has no liberty interest in being housed in any particular prison facility. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). Prisoners do not have a constitutional right to access programs or to demand to be housed in one prison rather than another absent a showing of significant hardship: "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum*, 427 U.S. at 224; s*ee also Sandin*, 515 U.S. at 484 (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest). Plaintiff does not have a right to be housed in a particular prison or participate in a particular program; claims based on these allegations must be dismissed.

C.    Access to the courts

Plaintiff's allegations that he was denied confidential telephone calls with his attorney and denied access to legal materials state a claim of denial of access to the courts. Prisoners have a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). A prisoner must show that the alleged limitations "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds*, 430 U.S. at 825; *see also Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978). In *Lewis v. Casey*, the

---

the holding . . . has not." *Lee v. Higgins*, No. 08-ct-1594, 2008 WL 2690101 at *3 n.1 (D.S.C. Jul. 1, 2008).

Supreme Court clarified the *Bounds* decision by finding that a deprivation of a prisoner's right of access to the courts is actionable, but only where the prisoner is able to demonstrate actual injury from such deprivation. *Lewis*, 518 U.S. at 349. The actual injury requirement, however, is not satisfied by every frustrated legal claim. *Id.* at 354. Prisoners are not guaranteed the ability to litigate every imaginable claim they can perceive, but they are entitled to access to the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 354.

WCI policy provides that all telephone calls are recorded unless an attorney contacts the institution in writing requesting that the telephone calls not be recorded. ECF No. 27, Ex. 13. The attorney's name and telephone number must be verified by the housing unit manager and approved by the chief of security before the calls are verified as legal-related calls. Lt. Malloy avers that he never listened to a recorded call between Ireland and his attorney(s). *Id.*, Ex. 13 & 21. Ireland participated in several telephone calls with his attorney while incarcerated at WCI. *Id.*, Ex. 12.

For Ireland to prevail on his claim, he must establish that the use of this phone system has infringed on a constitutionally protected right and caused him an injury. *See White v. White*, 886 F.2d 721, 723-24 (4th Cir. 1989) (district court properly dismissed a prisoner's claim that contained no allegation of specific injury related to a delay in legal mail).

Ireland has shown no actual injury or specific harm suffered as a result of any of the actions of which he complains.[4] There is no evidence that adverse action was taken in the Plaintiff's state court

---

[4] The Plaintiff's allegation that he missed filing deadlines, without more, is insufficient to demonstrate actual injury.

proceedings due to any of the alleged actions of the Defendants.  The only evidence he offers of injury are conclusory statements that the conduct of Defendants violated his constitutional rights.

D.     Retaliation

Ireland alleges that since January, 2009, he has been retaliated against for his litigation against and assaults on correctional staff.  ECF No. 3 at 8.  To prevail on a claim of retaliation, the Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Beckwith v. Hart*, 263 F. Supp. 2d 1018, 1024 (D. Md. 2003) (*quoting Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

To make out a prima facie case of retaliation, the Plaintiff has the burden of showing that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the conduct of Defendants. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  In the prison context, the Plaintiff must establish that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve such goals. *See Rizzo v. Dawson*, 778 F.2d 527, 532 & n.4 (9th Cir.1985). The preservation of internal order and discipline constitutes a legitimate goal of the correctional institution. *Id*. at 532.  After the Plaintiff makes a prima facie showing, the burden shifts to the Defendants to demonstrate that they would have taken the same action in the absence of the Plaintiff's constitutionally protected conduct. *Mt. Healthy*, 429 U.S. at 287.

Here, Ireland offers nothing in support of his claim other than self-serving conclusory averments.  There is nothing in the record to suggest that the Defendants acted with the malice

alleged.  To the contrary, the evidence shows that Ireland was placed on administrative segregation to

investigate the ability to house him in general population as well as later to investigate his possible

involvement in misconduct.  *See* ECF No. 27  "In the prison context, we treat [claims of retaliation]

with skepticism because every act of discipline by prison officials is by definition retaliatory in the

sense that it responds directly to prisoner misconduct."  *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th

Cir. 1996) (internal quotation marks and citation omitted).  Ireland cannot prevail on this claim.

E.    Administrative Remedy Process

Ireland claims that the "enormous amount of ARPs/grievances/appeals" he filed have all been

dismissed.  ECF No. 3 at 8-9.   To the extent Plaintiff alleges that his ARPs were improperly

dismissed, his claim fails.  The adoption of procedural guidelines does not give rise to a liberty

interest; thus, the failure to follow regulations does not necessarily result in a violation of due process.

*Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir. 1993).[5]   Moreover, Plaintiff has pointed to no injury

arising from the alleged failure to properly process his administrative grievances.   To state a

constitutional claim a serious injury is required.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994)

(serious injury required in order to state a failure to protect claim); *Strickler v. Waters,* 989 F.2d 1375,

1380-81 (4th Cir. 1993) (serious emotional or physical injury resulting from conditions required to

state Eighth Amendment claim);  *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (medical

treatment must be so inadequate that it shocks the conscience in order to state an Eighth Amendment

claim); *Paul v. Davis*, 424 U.S. 693, 712 (1976) (damage to reputation through defamatory statements

not sufficient to state constitutional claim); *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997)

(actual injury required to state claim for denial of access to courts); *Lewis*, 518 U.S. at 355 (actual

---

[5]Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison
directive or regulation does not give rise to a federal claim, if constitutional minima are met.*See Myers v.*

11

injury requirement derives from the doctrine of standing).

    F.    Conditions of Confinement

Plaintiff contends that the conditions of his confinement expose him to a substantial risk of harm. ECF No. 3 at 13. Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*; *see also Lopez v. Robinson*, 914 F.2d 486, 490 (4th Cir. 1990).

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that the deprivation of a basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind.

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal quotation marks and citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called punishment, and absent severity, such punishment cannot be called cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (*citing Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 300. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. North Carolina Dept. of Corrections,* 612 F.3d 720, 723 (4th Cir. 2010) (internal quotation marks and citation omitted).

---

*Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

Governmental officials are shielded from liability for constitutional violations unless their acts transgress bright lines of clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). The objective prong of an Eighth Amendment conditions claim requires proof of an injury: "to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions. *Id.* Plaintiff has not explained the nature of the allegedly unconstitutional conditions. Similarly, Plaintiff has failed to allege how he was harmed by any conditions of his confinement. Accordingly, this claim will be dismissed.

## III.   Conclusion

For the aforementioned reasons, Defendants' Motion, construed as a motion for summary judgment, shall be granted.

Date: 2/10/12

William D. Quarles, Jr.
United States District Judge